# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 21-CR-160-2 (TJK) |
| v. | : | 18 U.S.C. §§ 231(a)(3), 2 |
| **LOUIS ENRIQUE COLON,** | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Louis Enrique Colon, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020

Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Louis Enrique Colon's Participation in the January 6, 2021, Capitol Riot*

8.      Defendant was a first-degree member of the Proud Boys who lived in Blue Springs, Missouri. Beginning in or around December 2020, defendant, other Proud Boys members, and others, including some of defendant's co-defendants, began discussing traveling to Washington, D.C., on January 6, 2021, to, among other things, show their support for former President Trump and protest Congress' certification of the Electoral College.

9.      To coordinate their trip, individuals in the group sent electronic communications to each other which included discussions about engaging in violence with "Antifa" and Black Lives Matters supporters, obtaining/bringing two-way radios, medical supplies, weapons, and other equipment, and concealing their identities.

10.     On January 4, 2021, defendant and co-defendants Ryan Ashlock, Christopher Kuehne, and another individual drove from the Kansas City, Missouri/Kansas area to the

Washington, D.C. metropolitan area. Defendant brought a handgun with him on the trip, but did not bring it into Washington, D.C. Co-defendant Kuehne brought two AR-15 or similar assault rifles on the trip, which he kept in his vehicle and did not bring into Washington, D.C.

11.     On January 5, 2021, defendant and co-defendants Kuehne and Ashlock went to a hardware store to purchase items to use on January 6. Among other things, defendant purchased and modified an axe handle to be used as both a walking stick and an improvised weapon. Kuehne, at defendant's suggestion, purchase orange, fluorescent tape so the group would be able to identify each other in a crowd.

12.     In the evening on January 5, 2021, defendant attended a meeting with co-defendants William Chrestman, Kuehne, and Ashlock, and others during which group safety was discussed. At some point during the meeting, another individual said that he did not come to Washington, D.C., to just march around and asked, "do we have patriots here willing to take it by force?" Defendant was shocked by this and understood that the individual was referring to using force against the government. Co-defendant Kuehne responded to the question by saying that he had his guns with him and, in essence, that he was ready to go. The individual who posed the question said that they should "go in there and take over."

13.     In the early morning on January 6, 2021, defendant, co-defendants Ashlock, Kuehne, and Chrestman, and others traveled from Arlington, Virginia, to Washington, D.C., where they met with a large group of Proud Boys at the Washington Monument. Along the way, co-defendants Felicia Konold and Cory Konold joined their group. Defendant and the group then marched in the street near the U.S. Capitol while shouting, among other things, "Whose streets? Our streets." Defendant and the group ultimately made their way to the west side of the Capitol's grounds, outside of the restricted, fenced-off perimeter which had barricades staffed by USCP

officers. At the time, defendant was wearing a backpack, pocket knife, tactical vest, tactical gloves, boots, and a helmet adorned with orange tape.

14. Defendant, other Proud Boys, and others, including co-defendant Kuehne and other co-defendants, proceeded past the police barricades and made their way towards the Capitol's West Plaza. Defendant and Kuehne climbed a wall to gain access to a higher level of the Capitol's exterior and, around 2:00 PM, unlawfully entered the Capitol building.

15. While inside the Capitol building, defendant observed co-defendants Chrestman, Felicia Konold, and Cory Konold at various points inside of the building, including in a downstairs area of the Capitol near where several retractable doors were being lowered by police officers in an attempt to stop rioters from proceeding further into a portion of the building. To prevent one of the doors from closing, defendant used his hands to stop the door and placed a chair in the door's path, while co-defendant Kuehne and another individual placed a podium in the path of another door.

16. At around 2:50 PM, defendant exited the Capitol building and met with co-defendants Chrestman, Kuehne, Felicia Konold, Cory Konold, and others on the west side of the building. They then left the Capitol's restricted grounds.

17. Defendant knowingly obstructed, impeded, and interfered with law enforcement officers while those officers were lawfully engaged in their official duties incident to a civil disorder that was occurring inside of the Capitol. Among other things, defendant prevented officers from closing a retractable door which was intended to prevent rioters from advancing further into a portion of the restricted Capitol building.

*Elements of the Offense*

18.  The defendant, Louis Enrique Colon, knowingly and voluntarily admits to all the elements of 18 U.S.C. §§ 231(a)(3), 2. Specifically, defendant admits that:

- Defendant committed or attempted to commit any act to obstruct, impede or interfere with any law enforcement officer;
- That the law enforcement officer was lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder; and
- That the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

19.  Defendant Colon also admits that Title 18, United States Code, Section 232(3) defines "federally protected function" as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof."

*Limited Nature of Factual Basis*

20.  This proffer of evidence is not intended to constitute a complete statement of all facts known by defendant Colon or the government. Rather, it is a limited statement of facts intended to provide the minimal necessary factual predicate for the defendant's guilty plea.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____
Christopher K. Veatch

                                          Assistant United States Attorney, Detailee
                                          IL Bar No. 6276097
                                          Patrick Henry Building
                                          601 D Street, N.W.
                                          Washington, D.C. 20530
                                          christopher.veatch@usdoj.gov
                                          (312) 886-3389

## DEFENDANT'S ACKNOWLEDGMENT

I, Louis Enrique Colon, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4/22/22

_____
Louis Enrique Colon
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/22/22

_____
James R. Hobbs
Attorney for Defendant