UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 21-CR-160-2 (TJK) |
| | : |
| LUIS ENRIQUE COLON, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Luis Colon to two years of probation, $2,000 of restitution, and the mandatory special assessment of $100. This sentence is at the low end of the guidelines range as calculated in the parties' plea agreement [ECF 142 at 2-3] and the pre-sentence report [ECF 273 ¶ 169].

**I.    INTRODUCTION**

The defendant, Luis Colon, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

Colon, a first-degree Proud Boys at the time, traveled to the capital region as part of a structured group that was prepared for violence. Along with other Proud Boys members and associates, he crossed the barricades at Peace Circle in the first wave of rioters to breach the restricted area, and he eventually entered the building where he obstructed police efforts to contain the mob. After being charged in this case, however, Colon has shown an unusual degree of acceptance of responsibility, as outlined in government's sealed filing that accompanies this memorandum. Accordingly, he deserves a sentence substantially lower than what the Court has imposed on co-defendants.

The government recommends that the Court sentence Colon to two years of probation for his conviction for violated 18 U.S.C. 231(a)(3). This sentence would provide just punishment and avoid unwarranted disparities while reflecting the substantial assistance Colon has provided.

## II.  FACTUAL BACKGROUND

### A.  The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF xxx, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.  Colon's Role in the January 6, 2021 Attack on the Capitol

*Pre-Planning with Kansas City Proud Boys*

In the leadup to January 6, Colon was part of a planning chat with other members of a Kansas City-area Proud Boys chapter. The discussion related partially to logistics like carpool assignments and lodging arrangements, but some members of the cohort made clear they anticipated serious violence. *See, e.g.*, ECF 254 at 2-3 (government's sentencing memorandum for

codefendant Kuehne, quoting Kuehne's messages encouraging "violence so massive that we send a message"). Colon, for his part, did not discourage such sentiments, but nor did he overtly embrace them. He did ask about bringing "flags and flagstaffs" in a discussion about what weapons were permitted in the District of Columbia, Ex. 1 at 2, and later expressed a willingness to "fight[] for freedom," qualifying that statement, "[a]nd by fighting I mean showing up and being present without being violent," Ex. 2. The group's planning also involved discussion of radios, medical supplies, and other tactically useful items.

Along with others in the planning group, Colon traveled from the Kansas City area to Virginia, where they stayed in a rented property the night of January 5. Colon brought a handgun on the trip, but (like other members of his cohort who traveled with firearms) he left it in a vehicle and did not bring it into Washington, D.C. Once they arrived in the D.C. metro area, Colon went with co-defendants Ashlock and Kuehne to a hardware store, where Colon purchased a modified axe handle that he could use as a walking stick and weapon.

### Conduct on January 6

On the morning of January 6, Colon and the other Kansas City Proud Boys traveled into the District of Columbia and made their way to the national mall. Colon was wearing a backpack, pocket knife, tactical vest, tactical gloves, boots, and a helmet adorned with orange tape, and other members of the group were similarly equipped. The tape was being distributed by co-defendant Kuehne, who had purchased it at the hardware store the day before at Colon's suggestion. While en route to the mall, they encountered several people whom they invited to join them, including Felicia and Cory Konold (co-defendants in this case) and Robert Gieswein (who was charged separately and has since pleaded guilty to two counts of assaulting officers). Like Colon and others in his group, the newcomers were dressed for physical conflict.

3

Outfitted in their gear and marked with orange tape, Colon's group soon joined with a larger group of approximately 100 Proud Boys members and associates, then marched together from the Washington Monument to the Capitol Building, away from the planned speeches. *See* Gov. Ex. 3. In Government Exhibit 3, numerous members of the marching group can be seen wearing the orange tape that had been purchased at Colon's suggestion.



*Still from Gov. Ex. 3 at 00:18 (Colon circled)*

They arrived at the First Street gate near Peace Circle just as Congress was preparing to begin the certification proceedings at 1:00 p.m., as required by law.

### Breach at Peace Circle

Between Peace Circle and the Capitol building stood multiple lines of physical barricades, including bike racks and temporary "snow fencing," manned at various points by uniformed officers of the U.S. Capitol Police (USCP). At intervals on the barricades were posted signs reading "Area Closed" in large text.

Within minutes of the group's arrival at Peace Circle, certain members of the crowd crossed the first line of barricades, approached a line of USCP officers who were guarding a fence inside

4

the restricted area, and began trying to force their way past the police line. Other members of the crowd, including members of the Proud Boys, surged forward behind them. After members of the crowd toppled the barricades and sent police fleeing, Colon followed along with the crowd, stepping over the downed fence and progressing toward the Capitol building. With the rest of the crowd, he was briefly stopped by a black metal fence manned by officers, but other rioters soon broke through that barrier as well, and Colon moved with the rest of the crowd onto the lower west terrace.

### *Entry to the Building*

Colon remained on the west front of the Capitol for more than one hour, as members of the crowd fought with police and officers used crowd-control measures including projectiles and chemical irritants to try to repel the increasingly violent mob. Eventually, the crowd reached the building and forced entry by breaking windows. Colon entered shortly after the initial breach.

At the time of Colon's entry, there were still parts of the building that had not yet been taken by rioters. The police, however, were continuously forced to retreat because of the rioters' overwhelming numbers, which allowed the crowd progress further into the Capitol.

In particular, a group of rioters that included Colon and other Kansas City Proud Boys chased police officers out of the Crypt and into a passageway or lobby leading to the Capitol Visitor Center. While the police were fleeing, several feet in front of Colon, a large metal door began lowering from the ceiling. The officers retreated behind the descending gate and tried to help it close while rioters tried to keep it open. In front of Colon, rioters threw a trash can at the officers and attempted to slide pieces of furniture into the door's path.

Before long, the officers yielded, and the crowd (with Colon just a few people back) continued moving forward. Although the officers had all fled, the door was still activated and

5

continued to close. But members of the Kansas City Proud Boys group, with Colon gesturing in support, worked together to drag a movable podium into the path of the door, replacing a smaller chair that another rioter had placed there:



*Still from Gov. Ex. 4 at 01:09 (Colon in orange)*

Shortly thereafter, Colon himself placed a chair into the path of another door in the area:



*Still from Gov. Ex. 4 at 01:38 (Colon in orange)*

Colon and other rioters then moved into the Capitol Visitor Center, following in the wake of the fleeing police, and remained there for a short time until they learned that a shooting had taken place near the House floor, after which they returned to the Senate Wing Door and left the building.

### III.     THE CHARGES AND PLEA AGREEMENT

On January 12, 2022, a federal grand jury returned a superseding indictment charging Colon and others with Conspiracy, in violation of 18 U.S.C. § 371; Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); Obstruction of Law Enforcement during a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); and Disorderly Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) On April 27, 20232 Colon was found guilty of Obstruction of Law Enforcement during a Civil Disorder based on a guilty plea entered pursuant to a plea agreement.

### IV.     STATUTORY PENALTIES

Colon now faces sentencing on one count of Obstruction of Law Enforcement during a Civil Disorder.

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, the defendant faces up to 5 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, restitution, and a mandatory special assessment of $100.

### V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

7

The plea agreement and the PSR correctly calculates the applicable guidelines, which are as follows:

Count Three: 18 U.S.C. § 231(a)(1)(3)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4 | Base Offense Level | 10 |
| **Combined Offense Level** | | **10** |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | -2 |
| **Total Adjusted Offense Level:** | | **8** |

See ECF 142 (Plea Agreement) at ¶ 4(A).

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. Section 4C1.1 will be in effect at the time of sentencing in this matter, but was not considered at the time the parties entered into the plea agreement.

The application of § 4C1.1 in this case would have no effect on the guidelines range, which is already 0-6 months. Nonetheless, § 4C1.1 should not apply here because of the events outside the Capitol Visitor Center, as the government argued in the case of co-defendant Kuehne who was also present there. See ECF 254 at 11-12. If the Court does apply § 4C1.1, the Court should vary upward by two levels to account for the resulting reduction in offense level. An upward variance is necessary because the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm.

*See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). Thus the defendant's conduct caused a significant disruption to a vital governmental function, warranting an upward variance. *See United States v. Eicher*, No. 22-cr-038 (BAH), Sentc'g Hrg. Tr. at 48 (varying upward by two levels to offset the Section 4C1.1 reduction).

Although the provision took effect after January 6, 2021, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications criminal activity have gone mainstream.").

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. PSR ¶ 60. Accordingly, with an offense level of 8 after acceptance of responsibility, Colon's Guidelines imprisonment range is 0 to 6 months' imprisonment. The defendant's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## VI. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors would weigh in favor of a term of incarceration but for the circumstances described in the government's sealed filing.

### A. Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Colon's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. He acted as part of a large, structured group that was uniquely impactful on the days events, and he personally endeavored to physical obstruct law enforcement by disabling a physical barrier. The nature and circumstances of Colon's offense were of the utmost seriousness.

### B. The History and Characteristics of the Defendant

Colon's history and characteristics do not weigh heavily in either direction. Based on the PSR, he appears to have a supportive family, a good record of employment, and vocational skills. He has no convictions, although he was arrested and charged with an offense as described at paragraph 62 of the PSR. Colon's compliance with the conditions of his pretrial release has been excellent. By pleading guilty early, and through the totality of his conduct, Colon has showed an

unusually high degree of acceptance of responsibility, and demonstrated that he promptly understood the wrongfulness of his conduct and signaled his desire to make amends.

      **C.**      **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Colon's criminal conduct on January 6 was the epitome of disrespect for the law. His subsequent actions show that he now understands that, but nonetheless the Court should be mindful of the seriousness of the offense when imposing sentence.

      **D.**      **The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[2] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

Many defendants who acted like Colon did at the Capitol require significant sentences to deter them from personally reoffending in the future. In Colon's case, that factor weighs somewhat less heavily. Colon's decision to disassociate from the Proud Boys after the events of January 6 showed an intention to avoid similar situations in the future, and his subsequent conduct has corroborated his commitment to that path. Moreover, the government's recommended sentence of

---

[2] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

probation would deter future criminality because of the threat of further penalties for violating conditions if Colon were to reoffend.

### E. The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F. Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[3]

The sentences imposed upon Colon's co-defendants were as follows:

- Felicia Konold: 45 days
- Cory Konold: 30 days
- Ashlock: 70 days
- Kuehne: 75 days
- Chrestman: 55 months

---

[3] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

As the sentences suggest, all the co-defendants except Chrestman are on roughly comparable tiers of culpability. Colon would rank similarly, and a sentence like Ashlock's and Kuehne's would probably be appropriate if not for the factors discussed in the government's sealed filing. To adequately account for those factors, a substantially lower sentence is warranted; hence the government's recommendation of probation.

## VII. RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Colon must pay $2,000 in restitution, which reflects in part the

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

14

role he played in the riot on January 6.[5] ECF 142 at 9-10. As the plea agreement reflects, the damages caused by the riot at the United States Capitol had were calculated at "approximately $1,495,326.55" as of May17, 2021, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Colon's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 194.

## VIII. FINE

The defendant's conviction subjects him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets and monthly cash flow set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. *See* PSR § 167.

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## IX.  CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of two years of probation.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:   /s Conor Mulroe
　　　Conor Mulroe
　　　NY Bar Number 5289640
　　　Assistant United States Attorney
　　　601 D Street NW
　　　Washington, D.C. 20530
　　　(202) 330-1788
　　　conor.mulroe@usdoj.gov